Our first case for today is 2015-1863 IPLearn-Focus v. Microsoft. Mr. Powers, please proceed. Thank you, Your Honor. May it please the Court. The claims at issue in this case are patent eligible under both steps 1 and 2 of the Mayo test, based on this Court's recent decision in Enfish for step 1 and based on this Court's recent decision in Bascom for step 2. Turning to step 1, what Enfish teaches is that the relevant inquiry, at least relevant to this case, is whether the claims are directed to an improvement in computer functionality or are instead merely using a generic computer to implement an otherwise abstract idea. What aspect of the claims themselves claims improvement on computer functionality? The combination of elements in the claims changes the way that humans interact with computers. The prior art was usually, this is 1996, you would interact with a computer using a mouse and a keyboard. That was conventional at that time. Under the claims, the way you interact with a computer is having an optical scanner, typically a camera, for example, recognize your face. So an example would be... But weren't those things known in 1996? What about putting them together in this system is new? Individually, they were all known. There is not a dispute about that. Individually, cameras were known. Individually, microphones were known. But how does putting them together improve the computer technology? I'm really not seeing this new argument. Because what had not happened in computers before was, for example, logging into a computer. Logging into a computer, typically in 1996, you would enter a username and a password. Logging into a computer using this, you can just show your face. The computer recognizes your face and logs you in. But that's not what this claims. This claim doesn't cover that. This claim covers the use of an optical scanner. It doesn't cover, it says nothing about logging in anywhere in the claim. No. It doesn't need to. What it's claiming is the components of the computer that permit that. That's how you control the computer. That is the only... Every one of those components had existed previously. Individually. I don't see how this improves the computer's functionality. Individually, they were known. Under BASCM, that is not enough. BASCM makes quite clear... Wait. The combination that you allege is novel involves the imaging sensor, the analyzing, and the determining. I don't see any combination in your hardware which is novel. It's certainly not analyzing the first set of measurements that improves computer technology. That's not improving computer technology. I disagree. What this claim is you have an optical scanner like a camera. You take measurements from that and use it to control what is displayed. You also have... In some of the claims. The claims are all different in terms of the number of types of scanners and what they're detecting. Take claim one, for example, 320. You have an optical scanner, a camera. That camera is being used to control what that camera detects and how that detects and what its detection... How it's being analyzed and how it's being analyzed is used to control the computer. The claim doesn't tell us what analysis is going on or how the inputs from the different sensors may result in some sort of a change. The claim doesn't recite... That's true, Your Honor. The claim does not recite a specific form of analysis and a specific result to occur from that. Respectfully, I don't think it needs to. That's the flexibility of any computer software system. But an example is you're detecting the head and particularly facial orientations and in particular maybe the eyes. There's various examples shown in various of the claims and the specification about that. And it's very clear that what you're using, what you're detecting and then how you analyze that is used to control the computer. But there's nothing in the claim that specifies or recites the analytical process that might be unique. I believe that's true. The claim is saying you're using the output of that to control the computer. It doesn't recite the particular analytic process. And isn't that what computers conventionally do? Computers conventionally do that. As I say, there's not a dispute that cameras were known or that even facial recognition was known. What is disputed is whether it was conventional to combine, for example, a computer with a computer with, for example, two sensors to decide what that computer was going to show you. As you recall, there was an IPR proceeding where that was the issue. Microsoft presented its best prior art. The IPR proceeding determined that not only did the prior art not anticipate, it didn't render obvious. And those are lower tests than conventionality. The test for 101 is not just that it might be obvious or anticipated from a scrap of paper sitting in an archive somewhere or a patent. It has to be conventional technology. And the conventional technology is not the individual components. What you're asking us to do in terms of this legal test, I don't even understand your distinction with conventionality or how it jives with what the Supreme Court's done, but let's put that aside for now. What you're asking us to do is to reach the legal conclusion that any time 102 or 103 has been rejected, whether it be by the patent office or by a jury, that there cannot stand a 101 rejection. I'm not asking that. I think in most cases that would be true. What I'm saying is that the legal test under 101 is a higher burden than 102 or 103. It's conventional, generic, and more importantly, it's not just the individual components. It's the combination. For obviousness and anticipation, it's always the combination. It's not just the individual components. There is nothing... For obviousness, sure. Not anticipation, but yes. No, for anticipation, every single one of the components together as combined have to be present in the prior art. I don't see a difference. Where do you get this idea that conventionality, under the Supreme Court precedent, I want you to show me something in the Supreme Court that is obvious or something, a sight, because they talk about novelty. They don't talk about this conventionality the way you are. I need to see something in the Supreme Court jurisprudence that justifies this very novel distinction that you're drawing between conventionality on the one hand and novelty or non-obviousness on the other. Mayo at 1292 says, simply appending conventional steps to the abstract idea is not obvious. So that's a 1292 of Mayo. This court's decision in Bascom is quite clear about the distinction that I'm making, that you can have anticipation by a single patent that was never built and never done anything about that was published 20 years ago that no one has ever used. I don't think it's a stretch to say that that's not conventional. It may be anticipated, but it's not conventional. And certainly if something's not obvious from what's present in the prior art individually, it's not conventional. The whole point of this 101 is not to duplicate 102 and 103, but to be a higher bar for the second step of Mayo. What we're talking about now is the second step of Mayo, not step one. So I think that answers your question about Supreme Court precedent and certainly about this court's precedent. I guess it gives the best answer you can give me. In Bascom there was actually a description of how the operation of the computer was improved. And I guess what I'm not understanding is I get your argument if the claims were different than they are. And so that's part of my problem is that the claim doesn't say, okay, here's that special algorithm that's going to allow this to operate together. Here's the special programming that we're going to use to allow this to operate together. It's just all you claim is doing this and doing this, and poof, it's going to work. I guess I'm missing what's in the claim. I see your point, and I think that goes, the first question whether that needs to be in the claim or the specification, I don't think the special algorithm or the special combination needs to be in the claim. Many, many computer claims don't claim that. That comes down then to a question of enablement, and enablement with respect is a separate question from 101, first. But also second, enablement here is quite much simpler because we are dealing with topics that were known individually. It was known how to do facial recognition. So you don't need an extensive disclosure in the specification to teach those skilled in the art how to do facial recognition. You don't need extensive disclosure in the art to teach someone how to sense a gesture in a field of view of a camera. That's not needed for anticipation, for rather enablement. And the claim, very few computer claims, particularly software claims, claim explicitly every variation of how that software might work. But we're in the specification. Is there any discussion of the algorithms that might make this operate the way you say it operates? It's at a general and high level for certain. We don't dispute that. But that again, A, goes to enablement, and that's not the issue here. But B, for the reasons I just discussed with Judge O'Malley, the level of disclosure that you need is proportionate in some degree to how well-known that is in the art. And if it's well-known how to do facial recognition, for example, you don't need to say, here's how you do facial recognition. Now you're talking about the individual components. And I agree with you, all the components are well-known, and it's well-known how they operate. But you're putting a lot of weight on the combination. I am, Your Honor. And emphasizing the fact that, from your point of view, the district court didn't appreciate that there is a combination here. I think it's plain that's true. An ordered combination that provides a new and useful result. Exactly. Just exactly what Mayo requires and what Baskin requires. And I agree. But the question is, where in the claim is that ordered combination? Well, the claim is clear. It is properly noted that the claim itself does not need to be specific. It can be broad. I agree with you on that. But you've got to find some hook, some place in the specification or in the claim that describes this ordered combination that makes this an inventive concept. The claim makes clear that what is happening is you're having, for example, in 320, claim one, two sensors, two inputs, and the output of both of those is used to control the computer. So that in and of itself is enough? That is enough, because that is what, for example, the PTAB has been relying upon to reject obviousness and anticipation in the IPRs. That combination, it teaches quite clearly that it's the combination of the two results that you're using. And that is what is used to control the computer. So then your Honor's question is, is the specification sufficiently detailed about how that combination is achieved? That, with respect, is an enablement question. Highly factual question on which there is extensive evidence in the record below on that issue, because that enablement was a defense. And experts have opined on that question. But that is an enablement question. That is not a question of whether the claim claims an ordered combination of the two inputs to control the computer, which it does. Let's assume there is enablement. Is just the fact that there are two sensors combined together enough? It's certainly enough to make it non-conventional, which is what's required for step two. There is no evidence, and it is Microsoft's burden, let's be clear about that. Whether it's clear and convincing evidence under Accenture or not, and I acknowledge that's an open question. But it is Microsoft's burden to show that it was, quote, conventional, close quote. It has not met that burden. There is zero evidence in the record on that question from Microsoft. We're well into your rebuttal time. Would you like to save the remainder? I would, thank you. Mr. Lamberson. Good morning. The combination that IPLearn just referred to is part of the abstract idea. Alice, step two says that you have to add something substantially more to the abstract idea. We can't rely on the abstract idea. I don't think the abstract idea is teaching, and I didn't read your brief as sort of fully embracing the idea it was teaching. Is that right? I mean, what would you please articulate for me the abstract idea? We've articulated it as observing the user, analyzing what they're doing, and then reacting to it. The district court similarly, he did use the word teaching, but he went on, and I believe A8 through A10, he talks about the idea of monitored interaction. He's talking about this idea of monitoring the students and reacting to what they're doing. Even if there is some kind of an abstraction that you can pull out, what we're talking about here is a use of a computer and by putting two different sensory mechanisms together. So couldn't the idea be using two separate methods through a computer system to monitor the students? To then measure the reactions of the user? To be clear, I think some claims have one sensor and some have two. But the claims that have two sensors, whether a teacher is looking at your, whether the students are looking away, or whether their eyes are closed, or whether they're speaking, that is the abstract idea. A teacher, a good teacher, can look at one thing, just their head, or two things, whether they're passing a note with their hands. So it is the abstract idea. Whether it's one sensor or two, they are only using those sensors to sense, which is what sensors do. They're saying, in some claims I want to look at their head, in other claims I want to look at their eyes, in other claims I want to look at their head and their eyes, or their head and their hands, or their head and their voice. But in no claim are they using those sensors to do anything other than that abstract idea. But at what point do we have an issue with respect to what constitutes just conventional computer systems? Or a generic computer system? And move into a system where we are talking about a far more sophisticated combination of elements. So I think if you're combining elements to do something other than the abstract idea, so BASCM is a good example of that. The abstract idea, I believe, was the idea of filtering content. That abstract idea doesn't require that you do that filtering at any one location. When we're talking about the idea of a teacher, or anybody else for that matter, watching an audience, seeing what they're doing and reacting to it, that does involve looking at multiple inputs from eyes, ears, and any other sense. So there is a distinction there, I think, between the type of case like BASCM and the facts here. Well, maybe there's some teachings that could be derived from that in the sense of 103. But in terms of 101, what's conventional about hooking up two sensors to a processor to provide a display? Right. And so what the patent tells us is that... The patent tells us that using any of these sensors to just a sense is something that is well known in the art. But my question is, what's conventional about using two of them? It would be conventional to use one at a time, but that's certainly true. But what's conventional about using two? And the claim does require both inputs to provide an effect on the display. Some claims do, that's right. I don't believe there's evidence in the record that says that two sensors together is conventional in that sense. But if we go back to Alice's system claims, for example, they talked about also analyzing two pieces of data together. You had two accounts with two separate pieces of data. So if all you're using is... No, but computers routinely analyze two pieces of data. I mean, that happens all the time. But what Judge Lynn is saying is, why would you take two pieces of hardware that are duplicative, two sensors, and put them together? Where is there any evidence that this combination was conventional? Sure. And actually, I think I misspoke earlier. So here's the answer. The only claim with two sensors is the one with the non-optical sensor. The non-optical sensor is a mouse. That's all it is. And we know from several cases that simply saying, having a computer with a mouse, is not adding an inventive concept. All of the other claims, I believe, and we can walk through them, have the optical sensor. Now the optical sensor may sense multiple things, but it's only doing what an optical sensor does, sensing. Whether it's the head or the hands, whatever you point it at doesn't make it patentable. And then the processor simply analyzes whatever was sensed. But what if the result of putting this equipment together and have it executing the steps that are sort of what is... an apparatus claim, but the steps as articulated in the specification, if that's all new and different, why isn't that patent eligible? What if this was a method claim instead of an apparatus claim? And the method was using sensors to sense... This is the claim. Because this is what's disclosed in the spec. This is the invention. So imagine that this is the claim. A method claim of taking a picture and measuring the distance between your eyes and your nose, two different points of reference, so that I can tell how close you are to the screen for dimensional purposes. I can see your eyes and I know you're looking at me. It says in the spec at some place, look at me on the screen. Isn't that somewhere in there? And then they say it takes a picture of your face and it measures the distance between your eyes and that second measurement will be for depth perception. So the dimensions, if they change, you'll know. And then it says periodically when this person is supposed to be working, because I've got four little kids, and sometimes I tell them to do Khan Academy. And I'm not positive they're sitting there for all 30 minutes and actually paying attention to the computer doing Khan Academy. So I actually thought this sounded like a pretty nifty invention to me, because it allows me to supervise whether they're really paying attention and looking at the screen. Because every two or five minutes it says some predetermined interval, it'll take another snapshot of you. And you know what, if you're looking over here and not looking at the screen, it's looking to measure the distance between your eyes, the distance between your eyes is different. And it then interprets from that that you're not looking at the computer. That does not sound like just conventional computer pieces all strung together. That sounds like a really nifty invention to me. So why is that not patent eligible? I think what you just described would be, but that's not the claims here. You do agree that that is the invention disclosed in the spec. I think I agree with you it's not in the claims, by the way. The claims are something much broader and more abstract than that. But I guess part of what I sat around with my clerks doing the last couple days is drafting claims, because I see an invention in this spec. And so we sat around drafting claims to say what number of patent eligible claims could be drafted based on the invention in this spec. And then we also, of course, focused on these claims. So are you sort of agreeing with me that what I just described to you, a method claim, because my clerks and I drafted one that looked like that, would have been patent eligible? I think whether it's method or system is irrelevant. In the field of facial recognition, that field is ripe even today for all sorts of innovation. If they came up with a new way to sense, as you said, how are you looking this direction or that direction, or where are your eyes or where is a face? The specification only cites a paper from 1977. Between the 70s and the 90s there were substantial advances. And between the 90s and today there have been substantial advances. So there are areas in there where they could have come up with a new... It would be great to have this software to track them. Then we'd know for sure if they're doing their laundry versus doing their work. Because we could periodically check them. Whether they would say it's great, I can't answer. But I think you're absolutely right that it really does come down to what did IP learn claim here. And they chose to write these broadly functional claims. Isn't the breadth of the claims, maybe that's a problem when it comes to enablement? Or it's a problem when it comes to obviousness? But why does that matter with respect to 101? It matters with respect to 101 because we have to ask for step two. What did they add that is substantially more than just the abstract idea of watching somebody seeing what they're doing and reacting to it? They've claimed a processor that allows the computer to react to it. Sure, but you could say similarly Alice claimed a processor that allowed a computer to perform intermediate settlement. Those are all business methods. The Supreme Court has been really clear with these business methods. That doesn't mean that every piece of software falls into that hole. Another example would be content extraction. There you had a scanner and you could say they had a scanner looking at the checks. But there was just a scanner doing what scanners do. There was no ordered combination of multiple sensors feeding inputs to a processor. And again, here the only added distinction, potentially, though I think if the claim had said two scanners, I don't know that the outcome would necessarily change. Here there's no two sensor claim. The only other sensor is a mouse. To be clear, it's a non-optical sensor. It could be a mouse, it could be a keyboard, it could be a microphone. The mouse is a sensor, is it not? It can be. Yes, and in fact the only non-optical sensor in the specification is a mouse and keyboard. There is no microphone recited in the specification. Let me approach this from a slightly different angle and ask you this. Since Judge Moore drafted a hypothetical claim, let me take a shot at it. Consider just a simple straightforward claim that says, a computer system comprising a display, a camera, a mouse, and a processor connected between the camera and mouse and the display. Period. Is there any question in your mind that that's patent eligible? I think that would be, you don't have them doing anything. It would be hard to find an abstract idea there. I think you recited all computer hardware. Why is it that just adding some language describing functionality somehow removes it from patent eligibility? Because that functionality is the abstract idea. Wait a second. The claim didn't drop out any of the structure. Yes, but all the structure, a display, a camera, a mouse is... Connected in a certain way. The claim I don't believe has the hardware connected in any certain way. All it says is that they're connected, or it doesn't even say connected, but we assume that since the processor is analyzing what the sensor senses, presumably it is connected. But whether the claim recited, for example, a display, a sensor, and a processor, or a display, a processor, and a sensor, or a sensor, a processor, a display, there's nothing magical to that ordered combination. That claim may not survive a 102, 103 challenge, but I'm just talking about 101 patent eligibility because it seems to me that claims are written like that all the time. A table consisting of four legs screwed to a top. There's no discussion of functionality, what could be on the table, how tall the table is, whether it will fall over or not. What I'm trying to get at here is why is it that when you claim certain structural combinations of components that otherwise would be considered certainly clearly patent eligible, that they magically become patent ineligible? Not 102, not 103, because they now describe what they can do. If the elements are conventional, and if the what they can do is the abstract idea, then Alice answers the question. If you're trying to claim just hardware and not having... It seems to me adding the functionality, if anything, makes the claim narrower. It certainly makes it narrower, that's right. It's not like it all of a sudden loses its structural character, or in my opinion its patent eligibility character, simply because you've now talked about certain things you might be able to do with that structural combination. I think my time has expired. Again, if all you had was hardware, I would agree with you, but when you have conventional hardware performing an abstract idea, and you're not adding substantially more to that abstract idea, that is not patentable, and that is the distinction on the one hand between... Let me continue with the hypothetical. What if you had, for instance, a computerized drone for delivering packages? Is the fact that it delivers packages, which is an abstract idea, somehow would that render it ineligible? I don't believe. If you have the claim that's on the drone itself, you have a new drone, I think that you could find patent eligible inventions there, certainly. Enabled or not, couldn't you say that these claims are to a processor that does the facial recognition, not just recognition, but the sensing of the human behavior that was not conventional before? The claims here, though, don't say that the processor does anything. All they say is that it analyzes. That's the extent to which what the processor does. The sensor senses things. That's what those claims say. But all of that functionality is just the abstract idea. It's what a good teacher knows. I want to look at their head. I want to look at their hands. I want to listen to see if they're talking when they shouldn't be. This idea of having multiple inputs is exactly what teachers have been doing for at least centuries. That is the abstract idea. Saying I'm going to do that with a processor is not patent eligible. Thank you. We'll add two minutes of rebuttal time to the time that he has left. Two minutes. Add two minutes to what he has left because he went. We let him go over to keep the time balance. Thank you, Your Honor. I'd like to begin with the drone example, if I may, because I think that's a perfect way of thinking about this problem. And the answer that you received from Mr. Lamberson, I thought, was instructive. If it's a new drone, it's eligible even if it's delivering a package, which is an old abstract idea. Putting aside abstract idea for a minute because I don't agree there, I'm going to go there. Here it's a new computer system. The claim is not to a method of teaching. It's to a computer system which is alleged to be new, as to which there's no evidence it's not new. And the computer system has different inputs and different portions of hardware attached to it. And that is the claim. What's your response to your friend's argument that the processor really isn't, that you don't claim the processor is really doing anything? In the claim, the processor is analyzing the results of the outputs of the sensor and using the results of that to control the computer. That's in the claim. That's in claim one of the 320. Is that in the other claims as well? It is in some form of that, as in, I believe, every claim. There are different inputs that are coming, but the whole point is it's using the combination of that to control the computer. And what I thought was important was that counsel admitted that if there's a new drone, and this is a claim to not a teaching method, but to a new computer system, as to which there is no evidence that it is not, in fact, new. Of course, we concede that the individual constituent elements of it were known, but that's true of most claims. Mr. Lamerson responded to my hypothetical by saying, and he thought the hypothetical just reciting the system, the display, the sensors, the processor, that that probably would be patent eligible, but once you add the functionality, then it becomes disqualified. What's your response to that? I think that there's two zones on that question. If the claim said you have a purely conventional computer system, and what you're doing is doing hedging on that computer. Undeniably an abstract idea, been around for a long time. I think the Supreme Court cases would say that that's not patent eligible. But what we have here is, A, a non-conventional combination of a new computer system, but that's step two. Go to step one. What it's saying that you do is not observe, analyze, react. It says you have an optical sensor, which measures in, for example, claim one, the head. Well, the head is not an abstract idea. Measuring the head is not something that you can raise to a level of abstraction that says that's just like being a teacher in ancient Greece. It is a sensor that measures the head. That's very specific. And I thought the counsel's argument with regard to Baskin was interesting, because he focused on Baskin's discussion of the location of filtering. Well, measuring the head is not a given, just as the locations of filtering in Baskin was not a given. Measuring a hand, having a non-optical sensor, such as a microphone, is not a given. Those are specific elements that are doing specific things. And whether you call that preemption or whether you call that non-abstraction, however you analyze step one, that is not an abstract process. And the analysis of the district court and Microsoft's position here is exactly what the district court did wrong in Enfish, which is essentially raising up the level of abstraction to the point where it was not recognizable to the claims. The claims have very specific limitations that are designed not to make it abstract. It's concrete. It's a particular... Let's look at, say, Ultramershal, where obviously I was on the side that kept thinking it was patent eligible for a long time until the Supreme Court finally forced us out of that thought process. So there, there were a lot of things that the computer was doing, and it seemed to take it away from a generic computer. And I guess I'm going back to the question I asked before. Where do we pass the line between a generic computer and using a generic computer to do something that a human could do, versus claiming steps that a computer is doing? Understood. And I think the answer to that is a contrast between contract extraction and BASCM. So contract extraction was simply taking a scanner as scanners were doing and having the scanner do what a scanner does. That's it. BASCM says, well, each of these individual elements were known, and they're doing what they were known to be doing in the past. But combined, that's not conventional. TLI, another good example. There it was just, do it on a telephone network. The network wasn't changed. It was the old telephone network. It had a bunch of elements that were known, but that combination was old. That's not true here. I have a question. I'm a little confused by something. A few minutes ago I thought I heard you say that each of the individual elements, there are only three elements in Claim 1 of the 320. A display, a sensor, and a processor. That's it. There's no other elements. Those are the only pieces of hardware, correct? 320? There's two sensors. Where's the second sensor? There's two measurements, but there's not two sensors. Not in Claim 1. Not Claim 1 of the 320 patent. Correct. The only three pieces of hardware are a single sensor, a display, and a processor. In your patent, you disclosed the optical sensor as being a standard digital camera. 180. That's the number. A minute ago I heard you say that while each of these individual elements might be conventional, the combination is not. Are you telling me the combination of a digital camera made to be attached to a computer, a display, and a processor is not conventional? That that combination of just those three elements standing alone? There's only three pieces of hardware in Claim 1. That's true, and what the first one is doing is two different things. That has nothing to do with whether the combination of those three pieces of hardware is conventional or not. I'm not talking about what functions they perform. That's fine. There's no evidence in the record that that combination is conventional. Your patent actually says that you take a standard digital camera for attachment to a computer. I don't know of a computer without a processor. I don't know of a computer without a display. There used to be. I went to MIT. This patent is dated 2013. 1996 is the date. I went to MIT a lot earlier than that. You're trying to tell me that a display, i.e. a computer screen, a processor, and a single digital camera, which you disclose as made to be used for a computer, a standard digital camera that is attached to a computer. It was not a conventional combination to have a camera attached to a computer in 1996. There's no evidence of that. Claim 35 is the one I was referring to, which has the optical sensor and the non-optical sensor. Which is a mouse, which is disclosed in your patent as either a mouse or a keyboard. Non-optical means non-optical. That could be a microphone. Not disclosed in your patent. There's no microphone disclosed anywhere in your patent. It doesn't have to be. Non-optical includes a microphone. Those skilled in the art know that. You don't have to disclose every version of a non-optical. No, but I'm trying to figure out whether there's any merit, which I don't think there is, to the comment you made about this combination of hardware elements not being conventional. I was referring to Claim 35, not Claim 1. Claim 1 is the camera, the processor, and the display. That you're admitting is conventional. I did not admit that because in 1996 there's no evidence that the combination of a camera with a computer was conventional. I don't think there is, and I don't think it was. Because I was around in 1996 too. Is your point, though, that what the camera is doing, which is sensing two different volitional movements, and then the processor is analyzing those movements and reacting to those movements? Exactly. That's Claim 1, and that's not conventional either. That wasn't done to control computers in 1996 or in 2006. I have one last question before I sit down. I sense some disagreement between the briefs about whether or not we are to march through all of the claims, or whether there was some acquiescence that Claim 1 was representative. The only claim you've referred to is Claim 1, except just now when you mentioned Claim 35. I am trying to understand. I didn't notice below that you made any meaningful arguments to the district court like, you can't use just Claim 1 because there are these other elements that make a difference. I guess what I'm wondering is, are we to focus on Claim 1, or are we to march through each claim individually? And did you actually preserve that idea below? The answer to the first question of whether the claims are meaningfully different, the answer is yes. We've made that point repeatedly about the different combinations of sensors and different things that they're sensing. We did that both here in the briefs. We laid it out so it's not just now. We did it extensively in the briefs, and we did it below. We made the point below that, in fact, the claims are all different, and you have to look at the independent and dependent claims separately. I understand that you made that point, but did you call out for the district court individual elements and explain to him how adding a second sensor, for example, would make a difference, that even if he were to believe that this claim was to an abstract idea and patent ineligible, that adding a second sensor would make a difference? Did you delineate for him the ways in which the elements of the dependent claims mattered to the outcome? Yes, we did. And where did you do that so I can find it? I don't have all of the sites for you here, but I'm happy to submit a list of sites for you within the next two days. Can I ask one last question, which is, which claims are still at issue? Because there's disagreement, I think, or at least confusion between the two parties on this point. There are asserted claims, and there are, in Microsoft's motion below and brief, encompassed additional claims than those that were asserted. So if you look at the claims that were asserted, I can give you the numbers of those if you'd like, starting with 320. Those asserted claims are 20, 21. Well, are some of the asserted claims going to fall out because of the IPR or not? They have already fallen out because we're basically at the point of trial. So I don't think they will fall out from here, but I can't make an explicit representation about that. Okay, so 21. 20, 21, 24, 30, 41, 44, 48, 73. In 321, 12, 26, 34, and 37. And in 174, it's 39 and 41. Can I ask if Microsoft agrees with that list? Are those the claims that are at issue here? We don't believe you need to pass on claim 39 of the 174 or claim 34 of the 321. Those were both found unpatentable by the Patent Office, a decision neither party appealed. You agree with that? We do. Okay. All right, I thank both counsel. The case is taken under submission.